Frank ZIZZO, Petitioner-Appellant,

v.

UNITED STATES of America, and James Traeger, United States Marshal, Respondents-Appellees.

No. 72–1234.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1972.

Decided Aug. 14, 1972.

Certiorari Denied Nov. 13, 1972. See 93 S.Ct. 443.

John Kappos, Gary, Ind., for petitioner-appellant.

Sidney M. Glazer, Kenneth L. Greenman, Jr., Attys., Criminal Division, U. S. Dept. of Justice, Washington, D. C., William C. Lee, U. S. Atty., Fort Wayne, Ind., for respondent-appellees.

Before FAIRCHILD and SPRECHER, Circuit Judges, and CAMPBELL, District Judge.[1]

FAIRCHILD, Circuit Judge.

This is an appeal from a denial of habeas corpus. Petitioner Zizzo, a federal prisoner, challenges revocation of his parole.

Zizzo began service of a five year sentence June 18, 1965 and was paroled December 19, 1966. On January 16, 1970, a warrant was issued by the board of

---

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

parole. The warrant application charged Zizzo with Associating with Persons Having a Criminal Record and Engaged in Criminal Activity. It was specified in the application that Zizzo had met with Anthony P. Gruttadauro, Nick Guzzino, Ralph J. Tuccillio, Michael Salerno, and Abe Kushner.

On January 26, 1970, after Zizzo had been taken into custody, the probation officer supervising him on parole held a preliminary interview with Zizzo and his counsel. On February 25, a supplemental application was filed, adding the charge, Associating with Persons Having a Criminal Record, Bad Reputation and Engaged in Questionable Occupations, and specifying the same meetings with Gruttadauro. On March 20, a local parole revocation hearing was held before Hearing Examiner Doneghy. Zizzo was present with his counsel. On April 3, the parole board issued an order: "revoked and continued to expiration."

Zizzo's imprisonment was interrupted from July 14, 1970 until January 31, 1972 as a result of proceedings under 28 U.S.C. § 2255, challenging the underlying conviction, at first successfully but ultimately not so, for reasons which are irrelevant to the validity of parole revocation.[2]

On January 31, 1972, Zizzo filed a petition for writ of habeas corpus, to review the parole revocation proceeding. In addition to various formal documents concerning the revocation, the government presented, for *in camera* inspection only, a copy of the hearing examiner's report, containing findings and recommendations,[3] and the Zizzo file of the local probation office. The government also presented facsimiles of several newspaper stories. As nearly as we can tell from the record, the latter were not presented at the revocation hearing, although there was general reference to newspaper stories, but were available to Zizzo's counsel at the habeas hearing.

The district court denied Zizzo's application for discovery of the examiner's report, and held that although part of the material submitted *in camera* would be admissible under the rules applicable to parole revocation hearings, the revocation was sustainable solely on the basis of the evidence at the revocation hearing and concerning Gruttadauro alone.

We have examined the report and file transmitted to this court under seal, and will refer to the report or the file where we refer to any information from either source.

Zizzo was originally convicted of fifteen counts of violation of 18 U.S.C. § 1952, "Interstate and foreign travel or transportation in and of racketeering enterprises," arising out of the operation of Zizzo's gambling business in Indiana.[4] The character of these offenses explains a special concern of the FBI with any of his activities indicating continued association with gamblers. The file indicates that several reports of suspicions of criminal activity were relayed to the probation officer supervising Zizzo on parole, but these were not supported by any proof. Later, reports of surveillance and meetings of Zizzo, usually at a pizza restaurant Zizzo operated in Gary, with Gruttadauro and oth-

2. See Zizzo v. United States, 431 F.2d 913 (7th Cir., 1970); 402 U.S. 938, 91 S.Ct. 1615, 29 L.Ed.2d 106, 447 F.2d 857 (7th Cir., 1971).

3. We are not told why the parole board insisted on nondisclosure of the report. Perhaps this is simply a policy of the board. The report summarized the proceedings and was at least a tentative decision, without anything to show that the board did otherwise than to adopt it. We can only surmise that the inclusion of a list of "Supportive Documents Incorpo-
rated By Reference" and the references on that list to communications from the FBI and Department of Justice and evaluations of parole progress reports in the file may supply the reason for confidentiality. Although those items are listed, the narrative portion of the report, and the findings and recommendations do not indicate that confidential material was relied upon.

4. United States v. Zizzo, 338 F.2d 577 (7th Cir., 1964).

ers, led to the first application for warrant.

At the preliminary interview, Zizzo produced Guzzino, Kushner, and Salerno (three of the persons specified) as voluntary witnesses. Tuccillio was dead, leaving only Gruttadauro, who did not appear. The report indicates that the examiner found the evidence insufficient to sustain the charge of associating with persons having a criminal record and engaged in criminal activity. He noted the absence of satisfactory evidence that these persons were currently engaged in criminal activity and that the convictions of those who had any criminal record were remote in time. The examiner did, however, find as facts that Gruttadauro had a bad reputation and that Zizzo was associating with him.

Zizzo had admitted to the probation officer that he had seen Gruttadauro frequently, as many as two to four times a week and conversed 20 minutes to a half hour, and that they were close friends, but denied that their conversations were about gambling or other illegal activities. Although the record includes sporadic statements by Zizzo that Gruttadauro came to the restaurant to eat, and that Zizzo had no knowledge of Gruttadauro's violating any law, and it appears that one of Gruttadauro's daughters was employed by Zizzo, Zizzo offered no full description either of what he knew about Gruttadauro's reputation or of the subjects of their conversations. He did not say whether or not he had read newspaper articles about Gruttadauro.

An FBI agent testified that Zizzo and Gruttadauro were observed at the restaurant 13 times from February 24, 1969 to December 19, 1969, four times being in October. He also stated that on October 30, Zizzo and Gruttadauro were observed conversing at a different pizza establishment. This was a place where Zizzo bought pizza dough, but it did not open for business until just before the time the two men left, and their cars were parked in the rear for at least 45 minutes before opening.

With reference to Gruttadauro's reputation, the agent said he had a very bad reputation, has been characterized as a hoodlum from Chicago and identified as associating with known hoodlums for the past ten years, has operated high stake poker games, barbutte games, and has been in control of numerous horse books in Gary. The agent said Gruttadauro had been a subject of several exposés in the Gary Post-Tribune bringing out his activities as a gambler and his reported association with known gamblers.

One of the articles presented to the district court and dated June 21, 1968, reporting an arrest of Gruttadauro and others on gambling charges, referred to him as "reputed boss of crime syndicate gambling in Lake County."

■ We agree with the district court that the information produced at the hearing gave factual support for the charge that Zizzo violated the conditions of his parole by associating with a person of bad reputation. We also agree that the procedures involved did not violate the standards heretofore applied to federal parole revocation.[5] There was a hearing, at which Zizzo was represented by counsel. He had notice of the charges and of specific instances claimed. Rules of evidence were greatly relaxed. The FBI agent testified (although apparently no witness was put under oath) and was cross-examined, although some of his testimony was hearsay. His description of Gruttadauro's reputation was corroborated by at least one clipping from a local newspaper, ascribing a similar reputation and reporting Gruttadauro's arrest.

Zizzo relies on Arciniega v. Freeman,[6] holding that incidental contacts between a parolee and another ex-convict in the

5. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963); United States ex rel. Carioscia v. Meisner, 331 F.Supp. 635 (N.D.Ill., 1971).

6. 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971).

course of work on a legitimate job for a common employer do not establish "association" forbidden by the terms of parole. It is clear in this case, however, that the board did not accept Zizzo's claim that his contacts with Gruttadauro were no more than ordinary conversation between restaurant proprietor and customer, and there was evidence of association beyond that context.

Since oral argument in this case, the Supreme Court decided Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (June 29, 1972), setting out basic requirements for parole revocation proceedings. The case involved parole under the law of a state, but its teaching as to the requirements of due process must logically apply to federal parole. In several respects the proceeding in Zizzo's case did not fulfil the specific requirements set forth in Part III of *Morrissey*.

 *Morrissey* requires "(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." The document in this case which most closely approaches requirement (f) is the examiner's report. To fulfil the requirement, however, we think the report would have to have been adopted by the board, as the ultimate factfinder. Presumably (f) implies that the written statement must be made known to the parolee, and it would seem logical to us, where the statement is first tentatively compiled by a single officer and later adopted by a board, it must be made known to the parolee, and he given an opportunity to object by written submission before adoption. This report has, however, been kept secret. We do not find, from our own perusal of the report, that the examiner, in making any material finding, relied on confidential material, but we note that, under *Morrissey*, there are two other requirements which bear on the use of confidential material: There must be "(b) disclosure to the parolee of evidence against him" and he must have "(d) the right to confront and cross-examine adverse witnesses (unless the

hearing officer specifically finds good cause for not allowing confrontation)." Earlier steps of the procedure in Zizzo's case were also inconsistent with *Morrissey* requirements.

 The requirements set out in Part III of *Morrissey*, however, are said to be "applicable to future revocations of parole," and thus limited to prospective effect beginning June 29, 1972. Accordingly we do not apply them here.

The judgment appealed from is affirmed.