Walter A. BURGESS, Plaintiff,

v.

Lawrence V. ROTH, Jr., et al.,
Defendants.

Civ. A. No. 71–938.

United States District Court,
E. D. Pennsylvania.

Jan. 9, 1975.

Keith Welks, Nancy Loeb, Law Students, Indigent Prisoner Litigation Program, University of Pennsylvania Law School, Philadelphia, Pa., for plaintiff.

Richard W. Hollstein, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983 (1970), plaintiff, Walter A. Burgess, brought this civil rights action, alleging that defendants deprived him of rights secured to him by the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States by detaining him in prison for six days after they had decided to release him. The individual defendants were or are members of the Board of Probation and Parole of the Commonwealth of Pennsylvania.[1] Under Rule 56 of the Federal Rules of Civil Procedure, defendants have moved for summary judgment, arguing that plaintiff has not stated a claim for relief under the Civil Rights Act and, in the alternative, raising several affirmative defenses. In response, plaintiff has also moved for summary judgment. The facts of this case are largely uncontested; the contested facts are not material. The case is therefore ripe for summary judgment. For reasons that will hereinafter appear, I have concluded that plaintiff has not stated a claim upon which relief can be granted under the Civil Rights Act. Consequently, his motion for summary judgment must be denied and defendants' motion for summary judgment must be granted.

### STATEMENT OF FACTS

1. On December 29, 1967, plaintiff was sentenced in the Montgomery County Court of Common Pleas to a two-to-ten year term of imprisonment on a variety of robbery-related criminal charges.

2. On June 14, 1970, plaintiff was paroled.

3. On March 10, 1971, plaintiff was arrested by the Abington Township Police Department on charges of assault and battery (private complaint), unlawful entry and malicious mischief, and was incarcerated in the Montgomery County Prison.

4. On March 11, 1971, defendants lodged a parole detainer against plaintiff.

5. On March 15, 1971, Justice of the Peace William Keller[2] set bail for plaintiff on the March 10 charges at $1,000.

---

1. Lawrence V. Roth, the Warden of the Montgomery County Prison, whose name appears in the caption of this case, is no longer a party defendant. Plaintiff's suit against him was dismissed with prejudice, pursuant to a stipulation by counsel, on June 21, 1974.

2. Justice of the Peace Keller was one of the original defendants in this suit. By order of this Court, the complaint against him was dismissed with prejudice on March 21, 1972.

6. At all times material to this action, plaintiff's mother was able and willing to post bail in order to secure the release of plaintiff pending his trial on the March 10 charges. The parole detainer lodged by defendants prevented her from securing his release.

7. On March 24, 1971, plaintiff was found guilty of the lesser charge of disorderly conduct. He was sentenced to pay a fine of $61.00.

8. On March 25, 1971, defendants voted to release plaintiff from detention. That same day, they issued an order to that effect.

9. On March 27, 1971, while plaintiff was still incarcerated in the Montgomery County Prison, a riot occurred there.

10. Plaintiff alleges that, though he did not participate in the March 27 riot, he received a head injury while attempting to return to his cell during it, and that his purportedly illegal detention was the proximate cause of this injury. Defendants allege that they lack information about the truth of the averments about plaintiff's injury, and deny the allegation of probable cause. The Court makes no findings of fact on these disputed issues.

11. Defendants mailed plaintiff's release order (¶ 8, *supra.*) to Parole Agent Lawrence Montgomery.[3] At 9:31 A. M. on March 29, 1971, the order was received by District No. 7 Parole Board in Allentown, Pennsylvania. March 28, 1971 was a Sunday.

12. On March 31, 1971, plaintiff's release order was hand-delivered to the Warden or his subordinate at the Montgomery County Prison.

13. On March 31, 1971, plaintiff was released from the Montgomery County Prison.

## DISCUSSION

■ Generally, federal courts are wise to avoid the adjudication of constitutional questions when they can properly dispose of a case on nonconstitutional grounds. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring opinion). In some § 1983 cases, however, a court need not consider certain relatively complex nonconstitutional issues unless the facts reveal that a constitutional violation has in fact occurred. In these cases, particularly if the facts are not contested, it may be entirely proper for the court to decide the constitutional issue first. For example, in Fidtler v. Rundle, 497 F.2d 794 (3d Cir. 1974), the District Court had dismissed plaintiff's complaint without reaching the merits of his constitutional claims. The Court of Appeals reversed. It noted that on remand, since the facts did not appear to be contested, "the district court might well decide the legal question—i. e., whether those facts amount to a constitutional violation." 497 F.2d at 802. It suggested that "[i]n such situation, judicial resources may be conserved by the district court's deciding the constitutional question." Id. Like *Fidtler,* the instant case is one where the critical facts are not contested, and I have no doubt that judicial resources will be conserved by my deciding the constitutional question. Accordingly, I have concluded that it is entirely proper for me to reach the merits of plaintiff's constitutional claims.

## THE DUE PROCESS CLAIMS

### A. *Detention Without a Hearing*

■ In his initial constitutional claim, plaintiff argues that his detention after arrest without a hearing by parole officers was a violation of due process. As authority for his contention, plaintiff relies primarily on Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This reliance fatally flaws plaintiffs' argument, because *Morrissey*

---

3. Agent Montgomery was also one of the original defendants in this suit. Pursuant to a stipulation by counsel, the action against him was dismissed with prejudice on August 22, 1972.

is not retroactive. 408 U.S. at 490, 92 S.Ct. 2593; Valdez v. Perini, 474 F.2d 19, 20 (6th Cir. 1973); Zizzo v. United States, 470 F.2d 105, 108 (7th Cir. 1972); Birzon v. King, 469 F.2d 1241, 1244 (2d Cir. 1972); M'Clary v. California Adult Authority, 466 F.2d 1122, 1124 (9th Cir. 1972).[4] A state parole board cannot be held liable for non-compliance with constitutionally mandated parole revocation procedures when the alleged noncompliance occurred more than a year before the procedures were announced and the procedures themselves were specifically identified as prospective. That is the case here. The alleged noncompliance took place in March of 1971; *Morrissey* was decided on June 29, 1972. Accordingly, plaintiff cannot prevail on his initial constitutional claim.[5]

B. *Was the Board's Policy of Hand-Delivering Release Orders Unreasonable?*

As Mr. Justice Douglas, writing for the majority, said in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Plaintiff's second due process claim sounds in tort, specifically the tort of false imprisonment, for "[u]nreasonable delay in releasing a person after he has a right to be released may constitute false imprisonment." 32 Am.Jur.2d, False Imprisonment § 27 (1967), and cases cited therein. Plaintiff contends that the six-day delay between the Board's decision to lift the detainer and his release from the Montgomery County Prison was unreasonable and thus deprived him of his constitutional right to liberty.

The precise gravamen of plaintiff's complaint on this issue is not easily determined. It is certainly a facial challenge to the constitutionality of the Board's 1971 release procedures.[6] Arguably, it is a challenge to the application of those procedures in the instant case as well. On neither ground, however, has plaintiff made an adequate showing that his constitutional right to liberty was in fact violated by the six-day delay between the Board's decision to lift the detainer and his release from incarceration.

Plaintiff's facial challenge to the constitutionality of the Board's release procedures reduces to a difference of opinion over matters of policy. Plaintiff argues that the Board's practice of hand-delivering release orders to correctional institutions is an unnecessary precaution. See Plaintiff's Memorandum in Support of Cross-Motion for Summary Judgment, Doc. # 43, at 17. Even if plaintiff's argument were valid, however, its validity would not render the Board's practice unconstitutional. The touchstones for the application of the Due Process Clause of the Fourteenth Amendment are reasonableness and fairness in view of all the facts and circumstances of a particular case. Bar-

4. Plaintiff concedes that *Morrissey* is not retroactive, yet inexplicably devotes nine pages of argument to a critique of defendants' failure to comply with *Morrissey*. Plaintiff's Memorandum in Support of Cross-Motion for Summary Judgment, Doc. # 43, at 4, 3–11. Plaintiff's request for declaratory relief is similarly mystifying. The procedures followed by the Board in March, 1971, have been superseded. Subsequent to the decision in *Morrissey*, the Board adopted detailed regulations that now govern the parole revocation process in Pennsylvania. 2 Pa.Bull. No. 34 at 1465–68 (August 5, 1972), codified at 37 Pa.Code §§ 71.3 and 71.4. A case that arises out of events which took place in March of 1971 is not an appropriate setting for a decision on the constitutionality of regulations adopted in August of 1972. Plaintiff's request for declaratory relief must therefore be denied.

5. I intimate no view on the question of whether the Board's post-*Morrissey* procedures satisfactorily comply with the constitutional standards announced in that decision.

6. The Board continues to employ those same release procedures. Defendants' Motion for Summary Judgment, Doc. # 40, affidavit of John H. Jefferson, ¶ 3.

ker v. Hardway, 283 F.Supp. 228, 237 (S.D.W.Va.), aff'd, 399 F.2d 638 (4th Cir. 1968), cert. denied, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969); see Hyland v. Procunier, 311 F.Supp. 749, 750 (N.D.Cal.1970). Admittedly, plaintiff's liberty is at stake, but liberty, under the Constitution, is subject to the restraints of due process, and a regulation complies with the demands of due process when it is reasonable in relation to its subject and is adopted in the interest of the community. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

The specific Board policy challenged by plaintiff is that of hand-carrying release orders to correctional institutions. At all times material to this action, it was the Board's policy to have agents hand-carry such release orders in order to effect the release of individuals who had been paroled or reparoled. The policy is still in effect. In an affidavit filed in support of defendants' motion for summary judgment, John H. Jefferson, a member of the Board, listed the reasons for that policy:

"a.  Detention facilities are not authorized to release a person who has a legally lodged warrant against him or her unless there is a release authorized by the issuing agency presented to the head of the detention facility. By hand-carrying a release order, chances of unauthorized release are far decreased.

"b.  The release from temporary detention document is forwarded to the appropriate district office to assure that the person to be released has a satisfactory parole plan, including home and employment. If the release order is mailed directly to the county prison, the client may be released without adequate facilities to support himself, which could increase chances of future violation.

"c.  Hand-carrying a release order enables an agent to rediscuss the Conditions of Parole and to discuss any new special conditions that may be imposed upon release.

"d.  Having the agent present at the time of release increases rapport between client and the agent and also makes the agent available to answer any questions that may be posed by the client."

(Defendants' Motion for Summary Judgment, Doc. # 40, Affidavit of John H. Jefferson, ¶ 2.)

▄ ▄ Given these reasons for the hand-delivery policy, I am unable to say, as a matter of law, that the policy is unreasonable in relation to its subject or that it was not adopted in the community's interest. *A fortiori*, I cannot say, as a matter of constitutional law, that the policy violates § 1983. In Earnest v. Moseley, 426 F.2d 466, 469 (10th Cir. 1970), a case involving a challenge to regulations announced by the United States Board of Parole, the court said that "[u]nless it is clearly shown that the procedures established by the Board are clearly discriminatory or so lacking in fundamental fairness as to deprive the parolee or releasee of due process, or that those procedures are clearly contrary to the statutes creating and regulating the Board, the court will not attempt to substitute its judgment for that of the Board." While the instant case involves the Pennsylvania Board of Probation and Parole, not the United States Board of Parole, the reasoning of the court in *Earnest* nevertheless points to the result I should reach here. There has been no showing that the Board's procedures are either discriminatory or lacking in fundamental fairness or contrary to the Pennsylvania statutes creating and regulating the Board. Accordingly, I decline to substitute my judgment for that of the Board. Plaintiff cannot prevail on his facial challenge to the Board's policy of hand-carrying release orders to correctional institutions.

## C. The Six-Day Delay

The alternate basis for plaintiff's second due process claim is the actual six-day delay occasioned by defendants' reliance on their procedure for the hand-delivery of release orders. I do not understand plaintiff to contend that any delay in his release after defendants voted to lift the detainer would have resulted in a constitutional violation. Such a position would clearly be untenable. "After all, the concept of due process does not involve the notion that the citizen is entitled to a forthwith process or insurance against all incidental hardship pending the execution of a reasonably expeditious and adequate process." United States v. Sosnowitz and Lotstein, 50 F.Supp. 586, 589 (D. Conn.1943). Instead, plaintiff, by his reliance on Whirl v. Kern, 407 F.2d 781 (5th Cir.), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969), concedes that the standard to be employed in the determination of whether or not a constitutional violation has occurred in this case is one of reasonableness, and he argues that the six-day delay here was, as a matter of law, unreasonable. I agree with plaintiff's premise but not with his conclusion.

In Whirl v. Kern, *supra,* a sheriff was held liable in damages under § 1983 when a delay of nine months ensued between the dismissal of charges against a prisoner and his release from jail. The ignorance which caused that delay, the court said, was "as a matter of law, ignorance for an unreasonable time." 407 F.2d at 792. The court, however, warned that "[t]he sheriff . . . must have some protection too. His duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained. We are not to be interpreted as holding that a sheriff commits an instant tort at the moment when his pris-

oner should have been released." Id. In my judgment, this warning controls the disposition of the instant case, for it announces a standard of reasonableness that comports with traditional notions of due process. See West Coast Hotel Co. v. Parrish, *supra;* Baker v. Hardway, *supra;* and Hyland v. Procunier, *supra.*[7] Only an unreasonable delay in a prisoner's release will result in the tort of false imprisonment. Only such a delay will justify a finding of a constitutional violation under § 1983.

In the instant case, the delay between the decision to release Mr. Burgess and the mailing of the release order was, at most, two days. The delay between the arrival of the order in Allentown and its hand-delivery by Parole Agent Montgomery to the prison was exactly two days. The record is barren of evidence which shows that these delays were caused by intentional misconduct or negligence on the part of either the Board or Parole Agent Montgomery. On the facts of this case, then, where the release of the parolee was effected six days after the decision to release was made by the parole board, where the board promptly set the release machinery in motion by mailing the notice of release to the appropriate parole agent within two days of the decision, where a weekend intervened to delay receipt of the mailed notice by the agent until four days after the decision, and where the agent, pursuant to not unreasonable release regulations, hand-delivered the release notice to the appropriate correctional institution two days after he received it, I cannot say that the delay in releasing plaintiff was unreasonable. Because the delay was not unreasonable, it was not unconstitutional. Because there was no constitutional violation, defendants cannot be held liable in damages for any alleged injuries suffered by plaintiff during the March 27, 1971 riot.

One would hope, of course, that once the board decides to release a de-

---

7. This standard is also part of the background of liability for the tort of false imprisonment in the context of a delayed re-

lease. See 32 Am.Jur.2d, False Imprisonment § 27 (1967), and cases cited therein.

tained parolee, the release will be effected as swiftly as possible. As Mr. Chief Justice Burger said in Morrissey v. Brewer, *supra*, 408 U.S. at 482, 92 S.Ct. at 2601, a parolee's liberty, though conditional, is so valuable an interest that it is protected by the provisions of the Fourteenth Amendment. Accordingly, when a parole board decides that detention of a parolee is no longer justified, the speedy restoration of that liberty is obviously a matter of high priority. Nevertheless, it would be manifestly unfair for a court to hold a parole board liable for a constitutional violation whenever a parolee's release is not effected as swiftly as the parolee (or the court) might desire. The due process standard is one of reasonable dispatch, not of instantaneous action. See United States v. Sosnowitz and Lotstein, *supra*, 50 F.Supp. at 588.

## THE ISSUE OF BAIL

▮▮▮▮ In his final constitutional claim, plaintiff contends that the detainer lodged against him by defendants deprived him of his right to bail under the Eighth Amendment. This argument is without merit. The cases upon which plaintiff relies concern admission to bail in a pre-trial context. At that stage of a criminal proceeding, several important interests are protected by a liberal policy of admission to bail. The accused is not punished prior to conviction and is assured an unhampered opportunity to assist in the preparation of his defense. Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951). These interests, however, are no longer relevant when a parole violation detainer is lodged against a parolee. The parolee has had an opportunity to assist in the prepara-

tion of his criminal defense. He is no longer presumed innocent of the original criminal charges filed against him. He has in fact been convicted of those charges. "This is a fundamental distinction from the pre-trial stage which, in our view, renders the Eighth Amendment inapplicable." In re Whitney, 421 F.2d 337, 338 (1st Cir. 1970), and cases cited therein.[8] Moreover, there is no absolute right to bail under the Eighth Amendment. United States ex rel. Fink v. Heyd, 287 F.Supp. 716 (E.D.La.1968), aff'd, 408 F.2d 7 (5th Cir.), cert. denied, 396 U.S. 895, 90 S.Ct. 192, 24 L.Ed.2d 172 (1969). See Tunnell v. Wiley, 369 F.Supp. 1260, 1265 n. 7 (E.D.Pa.1974); Commonwealth v. Fowler, 451 Pa. 505, 509–510, 304 A.2d 124, 126 (1973). Certainly, in Morrissey v. Brewer, *supra*, the Supreme Court did not understand the Eighth Amendment to require that the detained parolee be admitted to bail pending revocation, for the majority opinion explicitly refers to the "arrested parolee" and to his "continued detention." 408 U.S. at 485, 487, 92 S.Ct. 2593. See United States ex rel. Dereczynski v. Longo, 368 F.Supp. 682, 688 (N.D.Ill.1973).[9] The issuance of a lawful detainer against a parolee is an independent state ground upon which his confinement is predicated. By itself, it does not raise a constitutional issue as to the denial of bail. See In re Whitney, *supra*, 421 F.2d at 338; Tunnell v. Wiley, *supra*, 369 F.Supp. at 1265 n. 7. Accordingly, I conclude that the detainer lodged against plaintiff by the defendants did not deprive him of his right to bail under the Eighth Amendment.

## CONCLUSION

On the undisputed facts of this case, plaintiff has failed to state a violation

---

8. In the *Whitney* case, petitioner sought bail pending revocation of probation. There is, however, no constitutional difference between probation revocation proceedings and parole revocation proceedings. Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973).

9. The Court in the *Dereczynski* case did admit the petitioner-parolee to bail pending

revocation, but on equal protection grounds, because an Illinois statute provided for the admission of rearrested probationers to bail. The parties here have not referred me to any analogous Pennsylvania statute, nor has my own research disclosed the existence of such a statute. As a result, the Equal Protection Clause does not apply to, let alone control, the disposition of the instant case.

of his constitutional rights under either the Eighth Amendment or the Due Process Clause of the Fifth Amendment, as made applicable to the states through the Fourteenth Amendment. Accordingly, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

The foregoing opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.