**Richard E. WILSON, Plaintiffs,**

v.

**Pat ZELLNER and Pauline Spinney, Defendants.**

**No. 5:99–cv–173–0c–10GRJ.**

United States District Court, M.D. Florida.

March 26, 2002.

rudeness, and arriving to work late. (Mot. at 12–13.)

Richard E. Wilson, St. Petersburg, FL, for pro se.

Alison L. Becker, Office of the Attorney General, Civil Litigation Division, Tampa, FL, for Pat Zellner.

Sheila E. McCravy, Law Offices of Timothy M. Burke, Needham, MA, Carol A.

Falvey, Green, Kaster & Falvey, P.A., Ocala, FL, for Pauline Sprinney.

Caroline Anne Falvey, Green, Kaster & Falvey, P.A., Ocala, FL, for William O. Farmer, Jr., John Doe, Deputy Sheriff, Richard A. Roe, Mass. State Police Officer, Richard B. Roe, Mass. State Police Officers.

## ORDER GRANTING SUMMARY JUDGMENT

HODGES, Senior District Judge.

The remaining Defendants, Pat Zellner and Pauline Spinney, have each filed a motion for summary judgment (Docs. 108 and 106) asserting qualified immunity. The Plaintiff has filed memoranda in opposition to the motions (Docs 110 and 113) and the United States Magistrate Judge has filed a Report and Recommendation (Doc. 119) concluding that the motions should be granted. The Plaintiff has filed objections to that Report and Recommendation (Doc. 121).

Upon due consideration of the thorough and well reasoned Report and Recommendation of the United States Magistrate Judge, the Court has concluded that the Plaintiff's objections (Doc. 121) should be overruled and that the recommendations of the Magistrate Judge should be implemented. Accordingly, the motions for summary judgment (Docs 106 and 108) are severally GRANTED and the Clerk is directed to enter final judgment in behalf of the Defendants and against the Plaintiff with costs to be assessed according to law. The Clerk is further directed to terminate any other pending motions and to close the file. The pretrial conference previously scheduled for March 29 and the trial previously scheduled during the April term are cancelled.

IT IS SO ORDERED.

*REPORT AND RECOMMENDATION*[1]

JONES, United States Magistrate Judge.

Pending before the Court are Defendant Pauline Spinney's Motion For Summary Judgment (Doc. 106) and Defendant Zellner's Motion For Summary Judgment (Doc. 108). Both defendants claim that they are entitled to judgment as a matter of law because they are protected by qualified immunity. Plaintiff has filed memoranda in opposition to the motions for summary judgment (Docs.110, 113), and the motions are now ripe for disposition. For the reasons discussed below, the undersigned finds that both motions are due to be **GRANTED.**

## I. BACKGROUND

Plaintiff, proceeding *pro se,* filed suit against Defendants Spinney and Zellner, and several other defendants, claiming that they violated his rights under 42 U.S.C. §§ 1982, 1983, and 1985. On April 2, 2001, this Court entered an Order dismissing with prejudice all of Plaintiff's claims except his Section 1983 claims against Defendants Spinney and Zellner in their individual capacities. (Doc. 73.)

In his Third Amended Complaint Plaintiff alleges that Defendant Spinney, a trooper with the Massachusetts State Police, together with Plaintiff's ex-wife, "entered into a conspiracy and agreement to make application for a complaint for assault and battery against [Plaintiff]." (Doc. 65 at 3.) Plaintiff alleges that Defendant Spinney "was made aware of the fact that no such incident occurred." (Doc. 65 at 3.) Plaintiff alleges that "[a]s a result of the false allegations to which Spinney swore, ... a warrant issued for the arrest of [Plaintiff]." (Doc. 65 at 3.)

Plaintiff alleges that Defendant Zellner, an employee at the Sumter County Correctional Institution in Bushnell, Florida, "[held Plaintiff] or direct[ed] him to be held against his will and without any legal justification and without probable or reasonable cause" for a period of either a few hours or one day beyond the time at which Plaintiff was due to be released.[2] (Doc. 65 at 4.) Plaintiff alleges that, on the date he was entitled to be released, Defendant Zellner called him to her office and "informed [Plaintiff] that although he should be released that day, he was being held on an arrest warrant issued by a Massachusetts court." (Doc. 65 at 4.) Plaintiff alleges that "[w]hen asked to produce this warrant, [Defendant Zellner] was unable to do so." (Doc. 65 at 4.) Plaintiff alleges that "no legal or proper warrant or other documents for the arrest or detention of [Plaintiff] existed on [the date Plaintiff was entitled to be released], and [Defendant Zellner] was fully aware of that fact." (Doc. 65 at 4.)

Plaintiff further alleges that Defendant Zellner "entered into an agreement and conspiracy with [an unnamed deputy sheriff] to retain custody of [Plaintiff] in the Sumter jail, so that he would be available for the Massachusetts authorities who they were advised would be coming to Florida

---

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D.Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

2. Inconsistencies between Plaintiff's Third Amended Complaint, his deposition transcript, and his affidavit in opposition to Defendant Zellner's motion for summary judgment, make it unclear whether Plaintiff is alleging that Defendant Zellner had him held for one day beyond his release date, or whether she merely held him for a few hours while she made arrangements to have him taken into custody by the Sumter County Sheriff.

to take [Plaintiff] back to Massachusetts." (Doc. 65 at 4–5.) Plaintiff alleges that Defendant Zellner "knew that no valid arrest warrant nor any other documents existed to permit [the Sumter County Sheriff] to retain custody of [Plaintiff]." (Doc. 65 at 5.) Lastly, Plaintiff alleges that Defendant Zellner turned Plaintiff over to the unnamed deputy sheriff, who transported him to the Sumter County jail, where he was held for several days until the Massachusetts State Police arrived and took him into their custody. (Doc. 65 at 5–7.)

## II.  SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, the entry of summary judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3]  In applying this standard, the court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,"[4] and other evidence in the record "in the light most favorable to the non-moving party."[5]  Under the Supreme Court's holding in *Celotex Corp. v. Catrett,*[6] the moving party bears the initial burden of informing the court of the basis of the motion and of establishing the nonexistence of a triable issue of fact.[7]

If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[8]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[9] In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[10]  An action is devoid of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[11]

## III.  QUALIFIED IMMUNITY DOCTRINE

Following the Supreme Court's seminal decision in *Harlow v. Fitzgerald,*[12] the Eleventh Circuit has repeatedly held that "[g]overnment officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[13]  In such cases, qualified immunity offers "complete protection for government officials sued in their individual capacities."[14]

---

**3.** Fed.R.Civ.P. 56(c).

**4.** *Id.*

**5.** *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988).

**6.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**7.** *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

**8.** *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987).

**9.** *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

**10.** *Matsushita Elec. Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**11.** *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

**12.** *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**13.** *Hartley v. Parnell,* 193 F.3d 1263, 1268 (11th Cir.1999) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (1982)).

**14.** *Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir.2001).

■ To receive qualified immunity, "[t]he defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"[15] Thus, the defendant bears the initial burden of proof. However, "[o]nce the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."[16] Thus, "[o]nce a public official proves that he was acting within the scope of his discretionary authority, the plaintiff must demonstrate that the official's acts, at the time they were taken, violated clearly established federal statutory or constitutional rights of which a reasonable person would have known."[17]

Recently, the Supreme Court clarified the analytical approach that courts are to take in evaluating claims for qualified immunity. In Saucier v. Katz,[18] the Court explained the analysis as follows:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [public official's] conduct violated a constitutional right? This must be the initial inquiry.... If no constitutional right would have been violated were the allegations established, there is no ne-

cessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.[19]

Thus, the Supreme Court has made it clear that a court must first determine whether there has been a *constitutional violation.* If the court finds that a constitutional right has been violated, the next step is to determine whether the right was *clearly established.*

While the first determination is made by evaluating the established facts in the light most favorable to the plaintiff, it is the plaintiff that bears the burden of proof for both determinations.[20]

■ With regard to the second determination, as the Supreme Court observed in *Saucier*, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted."[21] "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition...."[22] "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[23]

**15.** *Rich v. Dollar,* 841 F.2d 1558 (11th Cir. 1988) (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)); *accord Lee v. Ferraro,* 284 F.3d 1188, 1193 (11th Cir.2002) (quoting *Rich* ).

**16.** *Lee,* 284 F.3d at 1193 (citing *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991) and *Rich* ).

**17.** *Priester v. City of Riviera Beach,* 208 F.3d 919, 926 (11th Cir.2000).

**18.** *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

**19.** *Id.* at 1194.

**20.** *See Lee,* 284 F.3d at 1193; *Priester,* 208 F.3d at 926.

**21.** *Saucier,* 121 S.Ct. at 2156.

**22.** *Id.*

**23.** *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"If the law did not put the [public official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." [24] In the words of the Eleventh Circuit, a public official "is entitled to qualified immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstances." [25]

## IV. DISCUSSION

In their motions for summary judgment, both Defendant Spinney and Defendant Zellner rely on the defense of qualified immunity. Because resolution of the issue of qualified immunity is dispositive for each of the pending motions for summary judgment, the Court will discuss the application of this defense to each defendant in turn.

### Defendant Spinney

■ Defendant Spinney argues that she is entitled to qualified immunity because she had probable cause to support the application for the warrant for Plaintiff's arrest. (Doc. 106 at 9.) In her affidavit filed in support of her motion for summary judgment, Defendant Spinney provides a detailed account of the information she obtained from an interview conducted with Plaintiff's ex-wife. (Doc. 106, Ex. B.)

In Trooper Spinney's affidavit, she avers that Plaintiff's ex-wife told her of numerous incidents of abuse by Plaintiff over a period of many years, which eventually led Plaintiff's ex-wife to file for divorce and seek a protective order against Plaintiff. [26] (Doc. 106, Ex. B at 1–2.) Plaintiff's ex-wife claims that, on at least two occasions, Plaintiff violated the protective order by sending her letters. (Doc. 106, Ex. B at 2–3.) Defendant Spinney avers that: "Based upon my interview with [Plaintiff's ex-wife], the supporting documentation regarding the abuse prevention order that was issued by the Court and the Plaintiff's blatant disregard for that order, I determined that probable cause existed to file criminal complaints against the Plaintiff for assault and battery as well as two violations of the abuse prevention order." (Doc. 106, Ex. B at 3.) Defendant Spinney further states that "[a]t no time did [Plaintiff's ex-wife] indicate to me that the allegations she was making against the Plaintiff were false and I certainly entered no conspiracy to enter false charges against the Plaintiff." (Doc. 106, Ex. B at 3.)

Plaintiff has filed two affidavits and a memorandum in opposition to Defendant Spinney's motion for summary judgment. In the first affidavit, Plaintiff denies ever physically abusing his ex-wife. (Doc. 110 at 5.) Plaintiff also denies ever being served with a protective order or knowingly violating such an order. (Doc. 110 at 5.)

In the second affidavit, Glenn E. Boley, a "friend" of Plaintiff and his ex-wife, claims that Plaintiff's ex-wife told Boley that Defendant Spinney told the ex-wife that "she did not have sufficient facts to warrant a complaint, but that she (Spinney) would take care of it and the com-

---

24. *Id.* 121 S.Ct. at 2156–57. "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 2157 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

25. *Marsh v. Butler County*, 268 F.3d 1014, 1030–31 (11th Cir.2001) (en banc) (quoting *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)).

26. A copy of the protective order is attached to Defendant Spinney's motion for summary judgment. (Doc. 106, Ex. F.)

plaint would issue." (Doc. 111.) This is a classic example of hearsay upon hearsay, which is inadmissible as evidence under the Federal Rules of Evidence.[27] Thus, Boley's statement has no evidentiary value for purposes of ruling on Defendant Spinney's motion for summary judgment.[28]

In his memorandum in opposition to Defendant Spinney's motion for summary judgment, Plaintiff alleges that there is "indirect evidence that [Defendant Spinney] knew or should have known that the statement of [his ex-wife] regarding the assault and battery ... was not factual." (Doc. 110 at 2.) However, the "indirect evidence" offered by Plaintiff can best be characterized as unsubstantiated arguments that Defendant Spinney should have performed a more thorough investigation and should have been more suspicious of his ex-wife's statements. (Doc. 110 at 2–4.) Thus, these bald assertions have little evidentiary value for purposes of ruling on Defendant Spinney's motion for summary judgment.[29]

Turning now to the application of the qualified immunity doctrine, there is no question that Defendant Spinney was acting within the scope of her discretionary authority when she interviewed Plaintiff's ex-wife and applied for a warrant for Plaintiff's arrest. Indeed, Plaintiff does not contest this issue in his memorandum in opposition (Doc. 110), and all but admits as much in his amended complaint (Doc. 65 at 3). Therefore, Plaintiff bears the burden of demonstrating that Defendant Spinney's actions violated a clearly established constitutional right of which a reasonable person would have known.[30]

Plaintiff alleges that Defendant Spinney knowingly made false statements in order to obtain a warrant for Plaintiff's arrest. Certainly, if true, this would constitute a violation of Plaintiff's rights under the Fourth Amendment. However, Plaintiff has not adduced any admissible evidence to support this allegation. The only admissible evidence presented by Plaintiff is his sworn statement that he did not commit the offense charged in the warrant. Defendant Spinney has sworn in an affidavit that she based her application for the warrant on information that she believed to be credible, and that she believed constituted probable cause. Further, she has specifically sworn that she had no reason to believe that the statements made to her by Plaintiff's ex-wife were false. Plaintiff has not come forward with any admissible evidence that casts doubt on Defendant Spinney's sworn statements. Therefore, viewing the record evidence in the light most favorable to Plaintiff, the Court finds that while there may be an issue of whether the Plaintiff actually physically abused his ex-wife, there is no genuine issue as to whether Spinney believed the information to be true and believed that it constituted probable cause.

The question, then, is whether Defendant Spinney's application for an arrest warrant, based on a mistaken belief that Plaintiff committed the offense charged, constitutes a violation of Plaintiff's Fourth Amendment rights. The Court concludes that is does not.

As the Supreme Court has stated, "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause ..., and in those situations courts will not hold that they have violated the Constitution."[31] Furthermore, as the Eleventh Circuit has ob-

---

27. *See* Fed.R.Evid. 802.

28. *See* Fed.R.Civ.P. 56(e).

29. *See* Fed.R.Civ.P. 56(e).

30. *See Priester,* 208 F.3d at 926.

31. *Saucier,* 121 S.Ct. at 2158.

served, "[a]ctual probable cause is not necessary for an arrest to be objectively reasonable."[32] "In determining whether qualified immunity exists, the issue is 'not probable cause in fact but "arguable" probable cause.' "[33] "An officer is entitled to qualified immunity ... where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could have believed that probable cause existed to arrest' the [plaintiff]."[34]

Thus, in the instant case, the test is not whether Defendant Spinney could have conducted a more thorough investigation, as Plaintiff asserts. Rather, the standard is whether a reasonable officer in that situation could have believed that probable cause existed to arrest Plaintiff. Police officers frequently make (valid) arrests based on the representations of a putative victim if they believe the representations to be credible. Thus, the Court has no doubt that reasonable officers in Defendant Spinney's position could have believed that probable cause existed to arrest Plaintiff. Therefore, even viewing the record evidence in the light most favorable to Plaintiff, the Court concludes that Defendant Spinney had (at least) arguable probable cause to apply for a warrant for Plaintiff's arrest. Accordingly, the Court finds that Plaintiff has failed to establish that Defendant Spinney violated his Fourth Amendment rights.

Having determined that there was no constitutional violation by Defendant Spin-ney, it is, therefore, unnecessary for the Court to address the second prong of the qualified immunity analysis (i.e., to determine whether the constitutional right at issue was "clearly established").[35] Accordingly, because Plaintiff has failed to demonstrate that Defendant Spinney's actions violated a clearly established constitutional right of which a reasonable person would have known,[36] Defendant Spinney is entitled to qualified immunity.

### Defendant Zellner

■ Turning now to Defendant Zellner, she argues that she is entitled to qualified immunity because she was acting within the scope of her discretionary authority, and Plaintiff has failed to demonstrate that Defendant Zellner's actions violated a clearly established constitutional right of which a reasonable person would have known. (Doc. 108 at 13–14.)

There can be no serious question that Defendant Zellner was acting within the scope of her discretionary authority when she delayed Plaintiff's release from prison. Indeed, Plaintiff does not contest this issue in his memorandum in opposition (Doc. 113), and all but admits as much in his amended complaint (Doc. 65 at 4) and in an affidavit (Doc. 114). Therefore, Plaintiff bears the burden of demonstrating that Defendant Zellner's actions violated a clearly established constitutional right of which a reasonable person would have known.[37]

In Plaintiff's affidavit, filed in opposition to Defendant Zellner's motion for sum-

---

**32.** *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990).

**33.** *Id.* (quoting *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989)).

**34.** *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir.1998) (quoting *Von Stein* ). *See also Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092 ("Only where the warrant application is

so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost.").

**35.** *See Saucier,* 121 S.Ct. at 2156.

**36.** *See supra* note 29 and accompanying text.

**37.** *See Priester,* 208 F.3d at 926.

mary judgment, (Doc. 114) Plaintiff states that, on the date that he was scheduled to be released from prison, he "was summoned into the office of [Defendant Zellner] who was an official in the prison." (Doc. 114.) Plaintiff avers that Defendant Zellner "told me that the Massachusetts State Police had notified the prison that they had a warrant for my arrest and that she was going to hold me until the Mass[achusetts] State Police came to pick me up." (Doc. 114.) Plaintiff asked Defendant Zellner for a copy of the warrant, but she told him that "it was in another office." (Doc. 114.) Plaintiff "returned to the room in which [he] was then staying and was later summoned to [Defendant Zellner's] office." (Doc. 114.) Plaintiff "again asked [Defendant Zellner] for a copy of the warrant," but was told that "she did not have it, that the Mass[achusetts] State Police must have it." (Doc. 114.) Defendant Zellner discussed the situation with the warden, "made some telephone calls," and later "led [Plaintiff] out, took [him] to the gate and turned [him] over to a sheriff from Sumter County." (Doc. 114.)

In support of her motion for summary judgment, Defendant Zellner has submitted excerpts from the transcript of Plaintiff's deposition. (Doc. 108, Ex. A.) In his deposition, Plaintiff claims that Defendant Zellner was "conned" by officials in Massachusetts into believing that there was a Massachusetts arrest warrant for Plaintiff. (Doc. 108, Ex. A at 30, 34.) Plaintiff testified that he was in Defendant Zellner's office when someone from the Norfolk County District Attorney's Office called Defendant Zellner and asked her to hold Plaintiff until the Massachusetts State Police could travel to Florida to arrest him for violating a restraining order. (Doc. 108, Ex. A at 30–31.) Plaintiff also suggests that Norfolk County officials faxed documentation to Defendant Zellner regarding the restraining order. (Doc. 108, Ex. A at 31, 37.) In his deposition testimony, Plaintiff appears to assert that the foregoing events occurred on the day that he was scheduled to be released, but that he was detained at the prison until the next day, when he was turned over to the Sumter County Sheriff. (Doc. 108, Ex. A at 37.)

When viewed in the light most favorable to Plaintiff, the foregoing testimony leads to the conclusion that, based on a telephone call from officials in Massachusetts, but without a copy of an arrest warrant in her possession,[38] Defendant Zellner delayed Plaintiff's release from prison for a period of one day, and made arrangements for the Sumter County Sheriff's Office to pick up and hold Plaintiff for the Massachusetts State Police.[39] Plaintiff contends

---

**38.** The Court notes that an exhibit to Defendant Spinney's motion for summary judgment contains a copy of a fax cover sheet that purportedly was sent, along with a copy of an arrest warrant for Plaintiff, by the Massachusetts State Police to Ms. Arlie Collins at the Department of Corrections on the day that Plaintiff was turned over to the Sumter County Sheriff. (Doc. 106, Ex. I.) This document has not been sworn to or certified, however, and the Court assigns it no evidentiary value. See Fed.R.Civ.P. 56(e).

**39.** The Court notes that Plaintiff's arrest by the unnamed deputy sheriff from Sumter

County and his detention in the Sumter County jail for a period of several days cannot be attributed to Defendant Zellner, as those were the actions of independent law enforcement officials. Any claim that Plaintiff might have for a constitutional violation for those actions can only be made against the law enforcement officials involved, not against someone who simply "made some telephone calls" to request law enforcement intervention. Thus, only Plaintiff's extended detention at the prison (i.e., the extra day or hours) is relevant to Plaintiff's claim against Defendant Zellner.

that this violated his rights under the Fourteenth Amendment. (Doc. 65 at 4.)

■ As the Supreme Court stated in *Baker v. McCollan*,[40] "[t]he Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.' "[41] Likewise, "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles."[42] Thus, "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."[43]

In *Baker*, a case involving mistaken identity, the Supreme Court held that "we are quite certain that a detention of three days ... does not and could not amount to [a constitutional] deprivation [of liberty]."[44] In defining the outer limits of a reasonable period of time, in *Douthit v. Jones*,[45] the former Fifth Circuit[46] held that "[d]etention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."[47]

In the instant case, assuming Defendant Zellner even detained the Plaintiff without having physical possession of the warrant, it was only for one day and was based on a telephone call from officials in Massachusetts. Plaintiff's detention for one day does not come close to the thirty day deprivation of liberty involved in *Douthit* and because its is less than the three day period, which the *Baker* court held did not amount to a constitutional deprivation of liberty, it seems doubtful that Plaintiff's detention for only one day would constitute such a violation.

However, even assuming *arguendo* that Defendant Zellner's actions of holding Plaintiff without physical possession of a valid warrant constitutes a violation of Plaintiff's rights under the Fourteenth Amendment, Defendant Zellner is, nonetheless, entitled to qualified immunity because Plaintiff has failed to establish that the alleged constitutional right was clearly established at the time of Zellner's actions.

Under this prong of the qualified immunity analysis the issue is whether it was *clearly established* at the time of Defendant Zellner's actions that it was unlawful for a prison official to detain a prisoner for a period of one day based on an oral representation that there was an outstanding arrest warrant for the prisoner. As the Supreme Court observed in *Saucier*, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted."[48] In the words of the Eleventh Circuit, a public official "is entitled to qualified immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all

---

**40.** *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

**41.** *Id.* at 145, 99 S.Ct. at 2695.

**42.** *Id.* at 146, 99 S.Ct. at 2695–96.

**43.** *Id.* at 146, 99 S.Ct. at 2696.

**44.** *Id.* at 145, 99 S.Ct. at 2695.

**45.** *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980).

**46.** Decisions of the Fifth Circuit before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

**47.** *Id.* at 532.

**48.** *Saucier*, 121 S.Ct. at 2156.

reasonable, similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstances." [49]

In *Whirl v. Kern,*[50] the former Fifth Circuit stated that, while a prison official has "the duty to effect [a prisoner's] timely release," that duty "is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." [51] The court emphasized that a prison official does not "commit[] an instant tort at the moment when his prisoner should have been released." [52] In the words of a concurring court, "[o]nly an unreasonable delay in a prisoner's release will result in the tort of false imprisonment. Only such a delay will justify a finding of a constitutional violation under § 1983." [53]

Plaintiff has failed to come forward with any relevant case law to show that it would be clear to a reasonable prison official that it was unlawful to detain a prisoner for a period of one day based on an oral representation that there was an outstanding arrest warrant for the prisoner, nor is the Court aware of any such law. Indeed, based on the Supreme Court's holding in *Baker,* and the former Fifth Circuit's statements in *Whirl,* as well as the views of other district courts that have addressed the issue, the Court finds that the law, existing at the time of Zellner's actions, would *not* compel all reasonable, similarly situated prison officials to arrive at the conclusion that Defendant Zellner's actions violated Plaintiff's constitutional rights. Thus, the Court concludes that, even if Defendant Zellner's actions violated Plaintiff's rights under the Fourteenth Amendment, the contours of that right were not sufficiently clear that a reasonable prison official would understand that Defendant Zellner's actions violated that right.[54]

Accordingly, because Plaintiff has failed to demonstrate that Defendant Zellner's actions violated a clearly established constitutional right of which a reasonable person would have known,[55] Defendant Zellner is entitled to qualified immunity.

## V. *RECOMMENDATION*

Because the Court has found, for the reasons discussed above, that Defendants Spinney and Zellner are entitled to qualified immunity, it is respectfully **RECOMMENDED** that Defendant Pauline Spinney's Motion For Summary Judgment (Doc. 106) and Defendant Zellner's Motion For Summary Judgment (Doc. 108) be **GRANTED.**

---

49. *Marsh,* 268 F.3d at 1030–31.

50. *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1968).

51. *Id.* at 792; *accord Burgess v. Roth,* 387 F.Supp. 1155, 1161 (E.D.Pa.1975) (quoting with approval and applying the Eleventh Circuit's statement in *Whirl* because "it announces a standard of reasonableness that

comports with traditional notions of due process").

52. *Whirl,* 407 F.2d at 792.

53. *Burgess,* 387 F.Supp. at 1161.

54. *See Saucier,* 121 S.Ct. at 2156.

55. *See supra* note 36 and accompanying text.