PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-4297

_____

MARIE DIFIORE,

Appellant

v.

CSL BEHRING, LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-13-cv-05027)
District Judge:  Honorable Gerald A. McHugh

_____

Argued September 11, 2017
Before:  VANASKIE, RENDELL and FISHER, *Circuit
Judges*.

(Opinion Filed:  January 3, 2018)

James A. Bell, IV          **ARGUED**
Jennifer Calabrese
Bell & Bell
1617 John F. Kennedy Boulevard
Suite 1020, One Penn Center
Philadelphia, PA 19103
                    *Counsel for Appellant*


David S. Fryman          **ARGUED**
Kelly T. Kindig
Ballard Spahr
1735 Market Street, 51st Floor
Philadelphia, PA 19103
                    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____


FISHER, *Circuit Judge*.

Marie DiFiore asserted claims against her former employer, CSL Behring, for retaliation in violation of the False Claims Act, and for wrongful discharge under a theory of constructive discharge in violation of Pennsylvania state

2

law. The False Claims Act ("FCA") includes an anti-retaliation provision for employee whistleblowers who engage in activity protected by the FCA. The District Court granted summary judgment to CSL Behring on the wrongful discharge claim because DiFiore had failed to show constructive discharge as a matter of law. For that same reason, the District Court did not permit DiFiore to argue that constructive discharge was an adverse action suffered in retaliation for protected activity. The FCA retaliation claim proceeded to trial. The judge instructed the jury that the FCA retaliation provision required that protected activity be the "but-for" cause of adverse actions against DiFiore. The jury found in favor of CSL Behring. DiFiore appeals the District Court's jury instruction using the "but-for" causation standard, the grant of summary judgment, and one additional jury instruction. For the reasons that follow, we affirm and hold that an employee's protected activity must be the "but-for" cause of adverse actions to support a claim of retaliation under the FCA.

## I.

### A. Factual Background

DiFiore worked for CSL Behring from 2008 until her resignation in 2012, first as an Associate Director of Marketing/New Products, and then, after a promotion in August 2011, as Director of Marketing. While at CSL, and particularly after her promotion, DiFiore became concerned about the activities of CSL and its employees in marketing drugs for off-label use and including off-label use in sales forecasts. Off-label use is the unapproved use of an approved drug, or the use of a drug for purposes other than those that have been approved by the FDA. The incidents that prompted DiFiore's concerns included comments about off-label

3

marketing strategies, relationships with medical device manufacturing companies, and discussions about fines issued to another company for off-label marketing. DiFiore expressed her concerns to her supervisors, and she contends that CSL initiated a third-party compliance audit in part because of her complaints.

DiFiore alleges that as a consequence of her protected conduct, she suffered the following six adverse employment actions, all of which took place after her promotion to Director of Marketing.

### 1. January 2012 Warning Letter

DiFiore and another employee, Allan Alexander, were both on the launch team for a new drug. In the first month of this team's formation, DiFiore and Alexander clashed twice. In the first incident, Alexander and DiFiore had a disagreement over the telephone that culminated with Alexander abruptly hanging up on DiFiore. DiFiore complained to her supervisor about Alexander's unprofessional behavior. In the second incident, DiFiore and Alexander had a disagreement at a team meeting that was so heated that the supervisor had to order a break. Afterward, DiFiore met with the supervisor and another manager to discuss her behavior, and DiFiore claims they "scolded" her. Subsequently, both DiFiore and Alexander received warning letters from Human Resources in January 2012. After this incident, CSL hired an employment coach, at a cost of about $45,000, to work specifically with DiFiore to develop her skills in leading the launch team.

### 2. February 2012 Performance Review

In a February 2012 mid-year performance review, DiFiore received "needing improvement" evaluations in several areas, including team leadership. Before her

promotion, she consistently received "strong" or "outstanding" evaluations. In response to this review, DiFiore wrote a letter expressing her belief that the criticism and lower ratings were due to her complaints about Alexander and her statements to auditors regarding compliance matters.

### 3. February 2012 Warning Letter

Also in February 2012, DiFiore received a warning letter regarding her nonpayment of her company credit card. The credit card company had canceled her card because it was more than 180 days past due. DiFiore stated in her deposition that this warning letter was "appropriate." DiFiore did not know whether anyone in a similar situation was disciplined, but she believed that others had not received discipline for similar conduct. She offered no evidence to support that belief.

### 4. Deteriorating Relationship with Supervisors in 2011 and 2012

DiFiore claims that beginning in approximately October 2011, her relationship with her supervisors and other management began to deteriorate because of her protected activity. She alleged that one superior became "hostile," started documenting her work activities, reprimanded her for complaining too much, and told DiFiore she was "too black and white" and that she needed to "understand shades of gray" as a supervisor. Another superior "completely avoided" DiFiore and refused to make eye contact in the hallway. Other supervisors criticized her during meetings that she was responsible for leading. DiFiore alleges that her supervisors "became 'hypercritical' of skills that had never previously been called into question."

### 5. Change in Duties in Early 2012

In March or April 2012, DiFiore was removed from a committee. The parties dispute the significance of her committee participation as a job responsibility. Both parties agree, however, that her annual review included participation on this committee as an element of her overall job performance. She was also instructed to stop attending meetings with a particular drug manufacturer client.

### 6. May 2012 Performance Improvement Plan

In May 2012, DiFiore was placed on a Performance Improvement Plan ("PIP"). This plan extended the employment coach hired by CSL to work with DiFiore for an additional 45 days. The PIP identified the following areas for improvement: effectively leading her drug-launch team; improving communications and follow-up; developing effective plans; asking questions when unclear about assignments; submitting assignments in a timely manner; avoiding intrusion into others' areas of responsibility; and demonstrating an ability to "navigate organizational dynamics." Under the PIP, DiFiore was required to improve in the designated areas within 45 days or she could be subject to discipline up to and including termination.

DiFiore argues that by placing her on a PIP, CSL indicated to her that she would be terminated. To support this assumption, DiFiore explains that of the 23 employees CSL identified as having been on PIPs since 2008, fourteen resigned. Of those fourteen, thirteen resigned without severance. Only four employees completed their PIP, and no employee at DiFiore's level or higher had successfully completed a PIP.

DiFiore received the PIP on a Monday. Two days later, she reached out to a supervisor and an HR employee and

6

requested a meeting to discuss an amicable separation. This meeting was scheduled for that Friday, but was canceled at the last minute without explanation. The following Monday, the first business day after the canceled meeting, DiFiore submitted her resignation letter.

B. Procedural History

DiFiore alleges that CSL wrongfully discharged her under Pennsylvania law and retaliated against her in violation of the FCA, 31 U.S.C. § 3730(h). After discovery, CSL moved for summary judgment. The District Court granted summary judgment on the wrongful discharge state law claim and held that DiFiore could not rely upon constructive discharge as an adverse action in her FCA claim. However, the court denied summary judgment on the retaliation claim.

After briefing on the issue, the District Court issued an Order that it would instruct the jury that the FCA retaliation claim required "but-for" causation. At the conclusion of the jury trial, the judge instructed the jury on the adverse action element of DiFiore's retaliation claim, instructing them to consider the totality of the circumstances and specifically listing four of the actions—the two warning letters, the mid-year performance review, and the PIP—DiFiore alleged were adverse to her.

The parties did not dispute whether the FCA applies or whether DiFiore engaged in protected conduct. Instead, they disagree over whether DiFiore produced sufficient evidence that the allegedly retaliatory conduct rose to the level of adverse action as required by the FCA.

II.

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). This Court exercises jurisdiction

7

under 28 U.S.C. § 1291. DiFiore presents three issues on appeal. First, she argues that the District Court applied the incorrect standard of causation for her FCA retaliation claim when it instructed the jury using the "but-for" standard of causation instead of the "motivating factor" standard. This Court exercises plenary review over whether jury instructions state a proper legal standard. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 929 (3d Cir. 1997). Second, DiFiore argues that the District Court incorrectly granted summary judgment to CSL on her claim of constructive discharge. We review the District Court's grant of summary judgment de novo. *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013). Third, DiFiore argues that the District Court abused its discretion when characterizing the alleged adverse actions in its instruction to the jury. We review for abuse of discretion whether jury instructions are confusing or misleading. *Woodson*, 109 F.3d at 929.

### III.

#### A. The Causation Standard

The District Court correctly applied Supreme Court case law when it instructed the jury using the "but-for" causation standard for DiFiore's FCA relation claim. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Under the FCA's anti-retaliation provision, an employee is entitled to relief if she was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts" conducted in furtherance of an FCA action. 31 U.S.C. § 3730(h)(1).

The parties dispute what causation standard applies to the statutory language "because of" in § 3730(h). To prove

8

retaliation under the FCA, a plaintiff must show (1) that he engaged in protected conduct, and (2) that he was discriminated against because of his protected conduct. *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001); *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 110 (3d Cir. 2007). The District Court ruled that DiFiore was required to show that her protected activity was the "but-for" cause of an adverse action, while DiFiore contends that a lower standard applies and she should have only been required to prove that her protected activity was a "motivating factor" in the adverse actions taken by CSL.

DiFiore argues that this Court's decision in *Hutchins* controls and compels the application of the "motivating factor" standard. 253 F.3d at 186. This argument fails because the language DiFiore relies on in *Hutchins* was dictum. *Id*. In *Hutchins*, we affirmed a grant of summary judgment in favor of an employer on an FCA retaliation claim because the employee failed to prove that he engaged in protected conduct and that he had put his employer on notice of possible FCA litigation. Because he failed to meet these elements, we never applied the causation standard, which we recited in dictum as the "motivating factor" standard. *Id*. That dicta does not compel us to apply the standard here.

Even if the "motivating factor" standard had been part of our holding in *Hutchins*, the Supreme Court's subsequent decisions in two cases, *Gross* and *Nassar*, undermine the rationale for applying that standard. These intervening decisions would, in any event, allow us to reconsider contrary prior holdings without having to resort to an en banc rehearing. *In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008) ("A panel of this Court may reevaluate the holding of a prior

9

panel which conflicts with intervening Supreme Court precedent.").

In *Gross*, the Supreme Court held that the ordinary meaning of "because of" in the Age Discrimination in Employment Act required a plaintiff to prove that age was the "but-for" cause of the employer's adverse action. *Gross*, 557 U.S. at 176. The Court prefaced its analysis with the premise that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purposes." *Gross*, 557 U.S. at 175. The Court went on to consider dictionary definitions of "because of" and explain that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Id.* at 176. The Court therefore held that disparate treatment claims under the ADEA require a plaintiff to prove that age was the 'but-for' cause of the adverse employment action. *Id.* at 180.

After *Gross*, the Supreme Court again addressed causation standards in the context of retaliation claims. In *Nassar*, the Supreme Court held that the use of "because" in the Title VII anti-retaliation provisions requires a plaintiff to prove that the desire to retaliate was the "but-for" cause of the adverse employment action. *Nassar*, 133 S.Ct. at 2527–28, 2533. The majority analyzed Title VII as prohibiting two separate categories of wrongful conduct and applying distinct causation standards to those categories. The first category—status-based discrimination on the basis of race, color, religion, sex or national origin—could be proven using the motivating factor standard because the language prohibiting this type of discrimination expressly required the lower burden. 42 U.S.C. §2000e-2(a), (m) ("an unlawful employment practice is established when the complaining

10

party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"). In contrast, the language of the second category of prohibited conduct—employer retaliation on account of an employee having opposed, complained of, or sought remedies for discrimination—contains no language specifying the lower standard of motivating factor. 42 U.S.C. § 2000e-3(a).

To interpret Title VII's anti-retaliation provision, the Court looked to its earlier decision in *Gross* for guidance. The Court held that the word "because" in the Title VII anti-retaliation provision had the same meaning as the words "because of" in the ADEA. Consequently, Title VII retaliation claims require proof that the protected activity was the "but-for" cause of the adverse employment action. *Nassar*, 133 S.Ct. at 2533. In arriving at this conclusion, the Court also relied on traditional tort causation principles. It held that those principles apply to federal statutory claims of workplace discrimination because the "but-for" causation required for tort claims "is the background against which Congress legislated in enacting Title VII, and these are the default rules it is presumed to have incorporated, absent an indication to the contrary in the statute itself." *Id.* at 2524. Against this background, the Court held that the motivating factor test only applied to status discrimination under Title VII because the language of the statute explicitly required it. Because such language was not present in the anti-retaliation provisions of Title VII, "but-for" causation applied.

Here, the District Court concluded that it was compelled by *Nassar* to apply "but-for" causation to DiFiore's FCA retaliation claim because of the "identical language" in the FCA, the ADEA, and Title VII. The court relied on *Nassar*'s logic and instructed the jury that DiFiore's

11

protected activity must have been the "but-for" cause of any adverse employment action she suffered.

The District Court's reasoning was sound given not only the Supreme Court's precedent, but also given our own case law addressing the effect of *Gross* and *Nassar* in the context of FMLA retaliation claims. In *Egan v. Delaware River Port Authority*, the plaintiff asserted a FMLA retaliation claim, 851 F.3d 263, 266–67 (3d Cir. 2017), urging that the district court should have given a mixed motive instruction, requiring less than "but-for" causation. The FMLA regulation at issue in *Egan* prohibited employers from considering the use of FMLA leave as a "negative factor" in an employment decision. 29 C.F.R. § 825.220(c). We concluded that the regulation, "which uses the phrase 'a negative factor,' resembles the 'lessened causation standard' in [the Title VII prohibition against status-based discrimination] and it stands in contrast to the 'because' language in the ADEA (at issue in *Gross*) and Title VII's anti-retaliation provision (at issue in *Nassar*)." *Egan*, 851 F.3d at 273. Based on this language, we applied a lessened causation standard requiring plaintiffs to show only that the use of FMLA leave was a "negative factor" in the adverse employment decision.

Unlike the language of the FMLA anti-retaliation regulation, the language of the FCA anti-retaliation provision uses the same "because of" language that compelled the Supreme Court to require "but-for" causation in *Nassar* and *Gross*. For this reason, the District Court correctly instructed the jury that to find retaliation, it had to find that DiFiore's protected conduct was the "but-for" cause of the adverse employment action.

For the foregoing reasons, retaliation claims under the FCA require proof of "but-for" causation. We affirm the

12

District Court's instruction to the jury employing that standard.

### B. Constructive Discharge

In reviewing a grant of summary judgment, we must "do as the district court was required to do." *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 338, 338 (3d Cir. 1983). That is, we must determine whether the record contains any disputed issue of material fact, resolve any such issue in favor of the non-movant, and determine whether the movant is entitled to judgment as a matter of law. *Id.*

DiFiore filed a state common law claim for wrongful discharge.[1] Wrongful discharge requires that a plaintiff prove either actual discharge or constructive discharge. Because she was not discharged, DiFiore was required to prove constructive discharge. In addition to her state law claim, DiFiore asserts constructive discharge as an adverse action for FCA retaliation purposes. We conclude that the District Court's grant of summary judgment in favor of CSL on DiFiore's wrongful discharge claim was proper, as was the District Court's ruling that the grant of summary judgment foreclosed DiFiore's argument that constructive discharge was an adverse action under the FCA.

---

[1] Under Pennsylvania law, the discharge of an at-will employee is a tort if it would violate a clear mandate of public policy. *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). However, we need not reach the issue of whether there was a discharge in violation of public policy, because there was no "discharge" at all. DiFiore does not argue that she was actually discharged, and we conclude that she was not constructively discharged either. Rather, DiFiore resigned.

13

Under Pennsylvania law, constructive discharge occurs when working conditions are so intolerable that a reasonable employee is forced to resign. *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628, 633–34 (Pa. Super. Ct. 1993); *Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 614 (Pa. Super. Ct. 2009), *aff'd*, 10 A.3d 267 (Pa. 2010). The concept of constructive discharge is essentially identical for retaliation claims under federal statutes: it occurs when "the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 331 (3d Cir. 2016) (brackets omitted).

DiFiore failed to prove constructive discharge under both Pennsylvania law and federal law. In *Clowes v. Allegheny Valley Hospital*, we overturned a jury verdict and held that the employee was not constructively discharged when she alleged conduct that essentially amounted to close or even "overzealous" supervision. 991 F.2d 1159, 1162 (3d Cir. 1993). DiFiore complains of similar conduct. She may have been subjected to difficult or unpleasant working conditions, but these conditions fall well short of unbearable. Importantly, DiFiore did not sufficiently explore alternative solutions or means of improving her situation. She made no attempt to comply with the PIP. When a meeting to discuss the PIP was canceled, DiFiore chose to resign rather than reschedule. She prematurely abandoned her attempt to meet with CSL about the Performance Improvement Plan. She did not demonstrate that she had no option left but to resign.

When the District Court decided that no reasonable jury could find that DiFiore's working conditions were so intolerable that she was forced to resign, it correctly disposed of both her Pennsylvania wrongful discharge claim and her contention that a constructive discharge was part of CSL's

14

retaliatory conduct under the FCA. We affirm the grant of summary judgment.

## C. Specific Jury Instructions

We exercise plenary review over jury instructions for misstatements of applicable law. *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005). When considering whether an instruction is misleading or inadequate, however, we review only for abuse of discretion. *Woodson*, 109 F.3d at 929. As long as "the instructions are accurate in substance and understandable to lay persons, the failure to use the exact words requested by counsel is not reversible error." *Williams v. Mussomelli*, 722 F.2d 1130, 1134 (3d Cir. 1983).

DiFiore contends that the District Court's inclusion of four primary incidents in the jury instructions—the two warning letters, the mid-year performance review, and the PIP—may have confused the jurors and led them to believe that they were not permitted to consider evidence of other incidents beyond those four events. DiFiore's argument fails.

The District Court correctly instructed the jury that its determination should take into account the totality of the circumstances. The court instructed that the four events occurred "among other things," and it described DiFiore's allegation that her supervisors began to treat her in a hostile manner after she raised her concerns. These instructions do not misstate the law and do not mislead, prejudice, or confuse the jury.

## IV.

For the reasons explained above, we affirm the orders of the District Court.