NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1987
_____

THE UNITED STATES, ex rel. FREEDOM UNLIMITED, INC.;
NORTHSIDE COALITION FOR FAIR HOUSING, INC.;
THE HILL DISTRICT CONSENSUS GROUP, INC.;
FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, INC.,

Appellants

v.

THE CITY OF PITTSBURGH, PENNSYLVANIA;
LUKE RAVENSTAHL, its Chief Executive Officer
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-12-cv-01600)
Honorable David S. Cercone, District Judge
_____

Argued December 11, 2017

BEFORE:  RESTREPO, GREENBERG, and FISHER, Circuit Judges

(Filed: March 28, 2018)
_____

Donald Driscoll
Kevin L. Quisenberry (argued)
Community Justice Project
Suite 900
100 Fifth Avenue
Suite 900
Pittsburgh, PA 15222

*Attorneys for Appellants*

Adam B. Fischer
John C. Hansberry
Pepper Hamilton
500 Grant Street
Suite 5000
Pittsburgh, PA 15219

Matthew S. McHale (argued)
Lourdes Sanchez Ridge
City of Pittsburgh
Department of Law
414 Grant Street
313 City County Building
Pittsburgh, PA 15219

*Attorneys for Appellees*

Chad A. Readler
Acting Assistant Attorney General
Sou C. Song
Acting United States Attorney
Nicolas Y. Riley (argued)
Michael S. Raab
United States Department of Justice
Appellate Section
Room 7231
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Charles W. Scarborough
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

*Attorneys for Amicus Curiae*

_____

OPINION*
_____

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.  INTRODUCTION

Appellants Freedom Unlimited, Inc., Northside Coalition for Fair Housing, Inc., The Hill District Consensus Group, Inc., and Fair Housing Partnership of Greater Pittsburgh (collectively "appellants") appeal from the District Court order of March 31, 2016, granting the motion of defendants, the City of Pittsburgh, Pennsylvania ("the City"), and Luke Ravenstahl, the former Pittsburgh mayor, to dismiss appellants' amended complaint and the order of March 31, 2017, denying appellants' motion to reconsider the earlier order in this False Claims Act, 31 U.S.C. § 3729,[1] ("FCA"), <u>qui</u> <u>tam</u> case.[2]  See <u>United States ex rel. Freedom Unlimited Inc. v. City of Pittsburgh</u>, No. 2-12-cv-1600, 2016 WL1255294 (W.D. Pa. Mar. 31, 2016).  The FCA makes it unlawful

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 action does not constitute binding precedent.

_____

[1] Appellants did not oppose the dismissal of their claims against Luke Ravenstahl, the former mayor of Pittsburgh.  Consequently, we refer to the defendants in the singular.

[2] Private persons may bring <u>qui</u> <u>tam</u> actions in the name of the United States in exchange for the right to retain a portion of any resulting damages award.  See 31 U.S.C. § 3730(b); <u>Schindler Elevator Corp. v. U.S. ex rel. Kirk</u>, 563 U.S. 401, 404-05, 131 S.Ct. 1885, 1889-90 (2011).  The plaintiffs bringing such actions are called relators.

3

knowingly to submit a fraudulent claim to the government. Appellants brought this action alleging on behalf of the United States that since at least 2006, the City annually has submitted false claims to the United States Department of Housing and Urban Development ("HUD") to secure funding from two of HUD's community development grant programs, the Community Development Block Grant ("CDBG") program, 42 U.S.C. § 5301 et seq., and the HOME Investment Partnerships ("HOME") program, 42 U.S.C. § 12741 et seq.

Appellants assert that they became aware that the City violated the FCA by making false certifications in its applications to HUD for federal funds of its compliance with conditions that it was required to meet to obtain the funding. The allegedly false certifications were to the effect that the City had been complying with express and implied conditions of grants with respect to fair housing, a citizen participation plan to allow for comments and public hearings on the proposed use of CDBG funds, and the limitation of the use of CDBG funds to authorized purposes. The District Court's opinion dismissing the case was highly detailed and thoughtful and interested persons may obtain additional information about the case from that opinion.

In particular, appellants assert that the City failed to take appropriate actions to analyze and address impediments to fair housing. In this regard, they charge that the City did not undertake a formal analysis of impediments to fair housing with sufficient frequency and did not identify concrete proposals to address impediments to fair housing. Moreover, appellants contend that even when the City did identify impediments to fair housing, such as the centralization of government-assisted housing in low-income and

4

minority-concentrated neighborhoods, it failed to take or even propose actions to redress those impediments. Appellants cite examples in the City's annual action plans and performance reports to show that the City did not provide proposed funds to address affordable housing issues. Therefore, according to appellants, the City left the impediments to fair housing identified in those reports unaddressed. Appellants emphasize that several of the City's administrative reports identify the appellant organizations as the bodies carrying out programs and testing to address affordable housing issues, but appellants claim that the reports overstated the amount of the grants made to them. Consequently, appellants assert that the City made false certifications to HUD with respect to fair housing.

Appellants' second false certification claim centers on the City's alleged failure to adopt and implement a citizen participation plan for its HUD programs. The City repeatedly certified that it follows a detailed participation plan that "provides citizens with reasonable and timely access to local meetings, information, and records relating to the grantee's proposed use of funds." 42 U.S.C. § 5304(a)(3)(B); see also 24 C.F.R. §§ 91.105, 91.225(b)(1) (setting forth requirement to develop citizen participation plan and to certify same). Appellants assert that the City frequently allocated CDBG and HOME funds to unspecified uses to be determined by the mayor, the city council, the City Planning Department and the City Urban Redevelopment Authorities. They further allege that to the extent community development proposals were made available for public comment, the City on multiple occasions either failed to address the comments received or reallocated the proposed funds without explanation or opportunity for further

5

comment. Thus, appellants believe that the City falsely certified that it was following a citizen participation plan.

Appellants' third false certification claim is that the City repeatedly has certified that it would spend CDBG funds only on eligible activities. The CDBG program gives individual jurisdictions broad discretion to decide how to spend program funds to further community development, but spending must be within statutory and regulatory limitations. See 42 U.S.C. § 5305(a) (listing eligible activities for CDBG spending) and 24 C.F.R. § 570.207 (giving examples of ineligible activities). In particular, subject to certain exceptions, the recipients of the HUD funds are barred from using CDBG funds to cover "expenses required to carry out the regular responsibilities of the unit of general local government." 24 C.F.R. § 570.207. In reality, according to appellants, these activities are precisely the type on which the City spent CDBG funds.

As we have indicated, the City successfully moved to dismiss the amended complaint. The District Court reasoned that appellants' claims concerning the City's fair housing and ineligible spending certifications did not survive the FCA's public disclosure bar because the City publicly disclosed the "allegations or transactions" underlying those claims. See 31 U.S.C. § 3730(e)(4). The FCA includes this public disclosure bar because a relator should not be able to profit from a qui tam case that it predicates on information developed by other parties. See id. The Court then held that even if the City made all three groups of allegedly false certifications it was not liable under the FCA because, in the Court's view, the certifications addressed conditions of participation in the programs rather than conditions for payment by HUD. The Court, relying on United

6

States ex rel. Wilkins v. Universal Health Group, Inc., 659 F.3d 295 (3d Cir. 2011) ("Wilkins"), held that false certifications with respect to conditions of participation in a government program cannot support a recovery under the FCA. Id. at 309. Thus, the Court distinguished between non-compliance with conditions of participation and non-compliance with conditions of payment.

The District Court entered its initial ruling granting the City's motion to dismiss on March 31, 2016. Then on June 16, 2016, the Supreme Court decided Universal Health Services, Inc. v. United States ex rel. Escobar, ___ U.S. ___, 136 S.Ct. 1989 (2016) ("Escobar"). Escobar rejected the distinction between conditions of payment of funds and conditions of participation in a federal program in a determination of FCA liability. Instead, the Court established the standard that a court should apply to determine if the defendant's compliance or non-compliance with a condition, whether of participation or payment, would have been material to the government's decision to make payment to the defendant.

After the District Court granted the City's motion to dismiss, appellants moved for reconsideration, but the Court denied the motion and reaffirmed its initial decision dismissing the amended complaint in an order and opinion entered March 31, 2017. Appellants then filed a timely appeal from the March 31, 2017 order which included an appeal from the earlier order. On the appeal the United States filed a brief as amicus curiae but did not do so in support of either party, urging instead that in light of Escobar we clarify the standard that must be met for a relator's showing of a claimant's non-

7

compliance with a condition of a grant to be material and thus actionable on an FCA claim.

For the reasons that we will explain below, we reject the District Court's dismissal of the case on the basis of the public disclosure bar. We will vacate the order of dismissal and remand the case to the District Court to reconsider the public disclosure bar and, if the case survives that review, to apply the newly adopted Escobar materiality standard.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We review dismissal of a complaint for failure to state a claim under Rule 12(b)(6) and Rule 12(b)(1), the rules applicable here, de novo. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008).

## II.  THE "PUBLIC DISCLOSURE BAR" AND MATERIALITY UNDER THE FALSE CLAIMS ACT

The District Court dismissed appellants' case in part because it held that the City's administrative reports which contained information about the City's non-compliance with the HUD requirements became "public information" or "news media" within the meaning of the public disclosure bar when the City posted the reports on its website. 31 U.S.C. § 3730(e)(4)(A)&(B). Thus, the Court regarded the appellants as having filed a qui tam suit based on information that the City revealed rather than on information that appellants uncovered. The questions of whether there has been a "public disclosure" within the meaning of the FCA and whether a relator qualifies as an "original source" for it to have

8

a basis for a successful qui tam action are matters of fact. See United States v. A.D. Roe Co., 186 F.3d 717, 726 (6th Cir. 1999). Consequently, when a Court considers a motion to dismiss in a qui tam case, as in any other case, it may grant the motion only if the facts necessary to support the motion appear in the complaint or in the exhibits referenced in the complaint that are regarded as part of the complaint. See Zubik v. Sebelius, 911 F. Supp. 2d 314, 322-23 (W.D. Pa. 2012).

In effect when a defendant makes a motion to dismiss, the nonmoving party must plead itself out of the case for its complaint not to survive the motion. Here appellants assert that they had independent material knowledge of the City's false claims on the government without reliance on the City's disclosures. Indeed, in their amended complaint they repeatedly pleaded that they "directly observed" that the City was making false certifications. For example, the amended complaint alleges that, contrary to the City's certifications and statements to HUD, the City did not take actions to address the lack of affordable housing in non-racially impacted areas repeatedly identified by the City as an impediment to fair housing. Though we are by no means suggesting that if the District Court had reached its result on a complete record it would have erred, we are satisfied that this case should not have been decided at this stage of the proceedings by the granting of the motion to dismiss. Instead, the Court should have given the parties an opportunity to develop the facts in discovery inasmuch as appellants claim that they did not rely on public disclosures by the City of its non-compliance with the conditions of the grants when they brought this case. Thus, we must remand the case so that the Court can reconsider whether the public disclosure bar precludes this action and, if not, to decide

9

the other issues. On the remand, the Court should consider the matter either on a summary judgment proceeding or on a plenary basis.

Appellants alleged that the City was falsely certifying that it was in compliance with restrictions on the activities for which CDBG funds may be used. In particular, appellants asserted that the City was using millions of dollars in CDBG funds to pay for regular governmental responsibilities, including street repaving and infrastructure repair rather than on expenditures proper under the HUD programs.

In addition to dismissing the case on the basis of the public disclosure bar the District Court ruled, in reliance on Wilkins that the certifications at issue were not material to the government's decisions on the City's claim for HUD funds and therefore were not actionable. We reiterate that in Wilkins, we made the fundamental distinction between a defendant's failure to comply with "conditions of participation" in a regulatory program, which we held was not actionable under the FCA, and a defendant's failure to comply with "conditions of payment" which we held was actionable. 659 F.3d at 309. Relying on the distinction between conditions of participation and of payment, the District Court held that the regulatory requirements underlying appellants' claims were conditions of participation and not conditions of payment and the City's alleged failure to meet the conditions was not actionable under the FCA.

The Supreme Court in Escobar instructed courts making a materiality inquiry to ascertain whether the matter at issue was capable of influencing the government's payment decision. 136 S.Ct. at 2002. Escobar thus supplied a materiality test that displaced various tests that inferior federal courts had been using to determine the

10

meaning of "materiality" in false-certification cases, including the "conditions of payment" test. Accordingly, in light of Escobar, even though we are making only a panel decision, we must revisit and revise our prior framework for evaluating the materiality of a defendant's non-compliance with a statutory, regulatory, or contractual requirement. See DiFiore v. CSL Behring LLC, 879 F.3d 71, 76 (3d Cir. 2018) (citing In re Krebs, 527 F.3d 82, 84 (3d Cir. 2008)).

As we have explained, the District Court in part dismissed appellants' amended complaint by applying the distinction between "conditions of participation" and "conditions of payment" that we drew in Wilkins. Thus, in a different context we said in Wilkins that "[i]n determining whether compliance with a regulation was a condition of payment from the Government, courts have distinguished between regulations which are conditions of participation in the Medicare programs and conditions of Government payment of Medicare funds." Wilkins, 659 F.3d at 309.

But as we have indicated, shortly after the District Court dismissed appellants' case, the Supreme Court decided Escobar. There, the Court reaffirmed that a "defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements" may give rise to liability under the FCA. 136 S.Ct. at 2001. In reaching that conclusion, the Court made clear that such omissions can be actionable even if the applicable statutory, regulatory, or contractual requirement was not "expressly designated as a condition of payment." Id. The Court declined to limit FCA liability to misrepresentations concerning "conditions of payment" because such an approach would exclude "misrepresent[ations of] compliance with a condition of eligibility to even

11

participate in a federal program." Id. at 2002. The Court explained that compliance with a condition of participation can be just as material to the government's payment decision as compliance with an express condition of payment.

The Supreme Court's rejection of the distinction between "conditions of payment" and "conditions of participation" in effect overruled Wilkins insofar as Wilkins distinguished between these two types of conditions when the Supreme Court rejected cases from other courts of appeals that reached results similar to that in Wilkins. Id. at 1999. Accordingly, even though Escobar reaffirmed Wilkins's holding that a defendant's failure to comply with certain statutory, regulatory, or contractual requirements may violate the FCA, the Supreme Court made clear that those requirements need not be express "conditions of payment" to trigger FCA liability. The Supreme Court determined that whether a defendant's failure to comply with administrative regulations gives rise to liability requires a determination of whether the defendant's non-compliance, if discovered, would have been "material to the Government's payment decision." Id. at 2002.

The Supreme Court began its definition of materiality under the FCA with the FCA's statutory definition of "having a natural tendency to influence, or be capable of influencing the payment or receipt of money or property." Id. (quoting 31 U.S.C. § 3729(b)(4)). It is not surprising that inasmuch as the concept of materiality appears throughout the law, the Court, relying on tort and contracts principles, explained that a matter is material if: (1) a reasonable person would attach importance to it in determining a choice of action in the transaction, or (2) the defendant knew or had reason

12

to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, regardless whether a reasonable person would do so. 136 S.Ct. at 2002-03. Moreover, the Court explained that a materiality inquiry is multi-factual. Id. at 2001. On the remand the District Court should rely on the factors set forth in Escobar in making a materiality decision. See United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 489 (3d Cir. 2017). Consequently, if the case survives the public disclosure hurdle on remand, the Court should focus on the factors set forth in Escobar to determine whether the City's failure to comply whether any program requirements could have influenced HUD's payment decisions.

## III. CONCLUSION

For the foregoing reasons, we will vacate the orders of March 31, 2016, and March 31, 2017, and remand the matter to the District Court for further proceedings consistent with this opinion. In particular, the Court should consider the public disclosure issue on a full record after discovery and if the case reaches that point reconsider the materiality issue on the Escobar standard.

13