NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1967
_____

DAVID DAVISON, as an individual,
Appellant

v.

DOUGLAS SHEAFFER, Individually and in his official capacity as Parole Officer
and/or Supervisor; VALERIE TAYLOR, As Administrator of the Estate of Christopher
Taylor, against whom relief is sought individually and for acts taken in his official
capacity as Parole Officer

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-15-cv-01373)
District Judge: Honorable Joseph F. Saporito, Jr.
_____

Argued May 26, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: July 17, 2020)


Curt M. Parkins **[Argued]**
Comerford Law
204 Wyoming Avenue
Scranton, PA 18503
        *Attorney for Appellant David Davison*

Timothy P. Keating
John C. Manning **[Argued]**
Pennsylvania Board of Probation & Parole
1101 South Front Street
Suite 5100
Harrisburg, PA 17104
    *Attorneys for Appellees Douglas Sheaffer and Valerie Taylor*

_____

OPINION[1]
_____

HARDIMAN, *Circuit Judge*.

David Davison appeals a summary judgment in favor of his parole officers on his claims under 42 U.S.C. § 1983. We will affirm.

I

Davison was on special probation in Lackawanna County after pleading guilty to aggravated assault. As a condition of his probation, Davison was to "refrain from assaultive behavior." App. 60. The sentencing court further instructed him that if he violated the conditions of release, the parole board had "the authority to lodge a detainer against [him], which w[ould], in effect, prevent [his] release from custody pending disposition by the Court, even though [he had] posted bail or ha[d] been released on [his] own recognizance from those charges." App. 61.

_____

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

While Davison was serving his term of special probation, Stacy Lynn Kennedy accused him of rape on March 25, 2015. Parole Agent Christopher Taylor, who was supervising Davison, and Parole Agent Douglas Sheaffer went to meet with Kennedy.

After Agents Taylor and Sheaffer drove Kennedy from her apartment to the police station, Detective Aaron Haley of the Carbondale Police Department took charge of the criminal investigation. Haley interviewed Kennedy that same day. During her interview, Kennedy recounted meeting Davison at a shopping mall about three weeks earlier. She stated that, after a few dates, things took a bad turn between them.

The day of the alleged rape, Friday, March 20, 2015 around 10:00 a.m., Kennedy claimed she

> was in her bedroom, wearing a t-shirt and boxer shorts when she heard someone enter the apartment. [Kennedy] stated that she went out of her bedroom into the kitchen area and found [Davison] entering through the back door. . . . [Kennedy] stated that [Davison] forced her backwards into her bedroom, pushed her down on to a couch, and raped her . . . . [Afterwards, Davison] got up, pulled his pants up and stated I told you I get what I want, [sic] then left.

App. 70. Haley asked Kennedy why she waited five full days to notify law enforcement. Kennedy said "she was afraid of [Davison] and found out he was on parole and decided [that] morning to call the state parole agents" instead. *Id.*

When Detective Haley asked Kennedy to give a written statement memorializing her interview allegations, she declined, saying she had to go to work. Kennedy eventually signed a handwritten statement in which she confirmed she was "sexually assaulted/raped by David Davison," and the time, date, and place of the alleged rape. She also wrote that

3

she "fear[ed] for [her] life" and her children's lives because of Davison's actions and his verbal threats "to kill [her] and [her] children." App. 62.

After the interview, Agent Sheaffer—relying on Detective Haley's experience—privately asked him if he believed Kennedy's story. Sheaffer later testified that Detective Haley said he believed Kennedy, but "he had to do further investigation." App. 236. At his deposition, Detective Haley corroborated this account, saying he did not doubt Kennedy's verbal statement immediately after her interview. *See* App. 90–91 ("At the time [I had] no doubts. . . . It was throughout the course of the investigation when we started finding stuff that didn't fit her story.").

Based on Kennedy's interview and short written statement, Agent Taylor discussed the case with the Scranton district director. Davison was arrested several hours later, that same day, March 25. The next day, Agent Taylor prepared a written notice of charges informing Davison he was arrested for violating a condition of his special probation that forbade him from engaging in assaultive behavior.

Meanwhile, Detective Haley continued his investigation and soon came to doubt Kennedy's allegations. He visited Kennedy's apartment, where he found evidence contradicting her story. When he confronted Kennedy with the conflicting evidence, she became angry and threw him out of her apartment.

Six days after Davison's arrest, on March 31, Carbondale Police received an exculpatory video from a local bar showing the outside of Kennedy's apartment. The video showed Kennedy and Davison entering her apartment at the time of the alleged rape, Davison leaving about one minute later, and Kennedy running down the stairs after

4

him very soon afterwards. At no point did Davison come up the back stairs and enter Kennedy's kitchen as she had claimed during her interview.

After Detective Haley viewed the video—either that same day or the day after—he decided not to file charges against Davison. On April 1, a week after Davison's arrest, Detective Haley told Agent Sheaffer he was not going to press criminal charges against Davison. Agent Sheaffer relayed this information to Agent Taylor and his supervisor. Davison's technical violation was withdrawn and he was released from the Lackawanna County Jail on April 7, six days after Haley decided not to prosecute and 13 days after Davison was taken into custody.[2]

## II

After he was exonerated and released, Davison filed suit under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Pennsylvania. Defendants Sheaffer and Taylor moved for summary judgment, which the District Court granted.[3] The Court held that probable cause existed for Davison's arrest, the officers did not

---

[2] Following Davison's release, Detective Haley continued investigating Kennedy's allegations. About one month later, Kennedy was charged with making false statements to law enforcement. She pleaded guilty.

[3] Christopher Taylor is deceased and his estate is administered by his wife, Valerie Taylor.

5

breach any duty to investigate further after the arrest, and the delay in his release from prison was not unreasonable. Davison timely appealed.

III[4]

A

"We review the District Court's grant of summary judgment de novo." *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 75 (3d Cir. 2018) (citation omitted). We apply the same standard as the District Court, so we must "determine whether the record contains any disputed issue of material fact, resolve any such issue in favor of the non-movant, and determine whether the movant is entitled to judgment as a matter of law." *Id.* at 78.[5]

B

1

Davison first claims no probable cause existed for his arrest. "The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

[5] We have previously noted the "tension inherent in evaluating probable cause at the summary judgment stage." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). Although the summary judgment standard asks whether there is any genuine dispute of material fact, the probable cause standard "by definition allows for the existence of conflicting, even irreconcilable evidence." *Id.* (citation omitted). And while we view facts in the light most favorable to the nonmoving party, we must view all the facts an officer would have been able to consider "and assess whether any reasonable jury could conclude that those facts, considered in their totality[,] . . . did not demonstrate a 'fair probability' that a crime occurred." *Id.*

officers had probable cause to believe the person arrested had committed the offense."
*Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (citation omitted).

Davison argues there is a "genuine issue of material fact" as to whether Agent Sheaffer and Detective Haley believed Kennedy's allegations. The record shows the opposite. Both Sheaffer and Haley testified that they believed Kennedy's story at the time of the arrest. Sheaffer, who is "not experienced in interviewing victims of sexual assault," asked Haley's opinion on Kennedy's testimony. App. 236. Haley told him "he believed [Kennedy]" but had to investigate further. *Id.* And Haley likewise testified that he had at that time "no doubts" about the truth of Kennedy's allegations. App. 91.

During his own deposition, though, Davison asserted that Detective Haley told him and his attorney that he told the agents not to "tamper with Dave Davison" because Haley "believe[d] him to be innocent." App. 492. Davison also infers from the mere fact that Sheaffer asked Haley's opinion on Kennedy's credibility that Sheaffer had his own doubts about her story. Relying on his own statement, and an inference about Sheaffer directly contradicted by Sheaffer's testimony, Davison argues there is a genuine issue of material fact. We are unpersuaded.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested." *Dempsey*, 834 F.3d at 467. Viewing the record in the light most favorable to Davison, as we must, the District Court did not err. Sheaffer and Haley clearly testified that they did not doubt Kennedy's story until after they arrested Davison. And Kennedy provided the officers

7

with a detailed story in which she specifically identified Davison as her attacker. "[P]ositive identification by a victim witness, without more, would usually be sufficient to establish probable cause." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). Taken together, "the facts and circumstances within the arresting officer's knowledge" sufficiently established probable cause for a violation of the condition not to engage in assaultive behavior. *Dempsey*, 834 F.3d at 467. Davison's lone statement of Detective Haley's supposed doubts notwithstanding, the District Court correctly concluded there was no genuine issue of material fact. *See id.* at 486 ("[W]here the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.").

Davison nevertheless argues that the officers possessed evidence of Kennedy's unreliability at the time of his arrest sufficient to negate probable cause. *See Wilson*, 212 F.3d at 790 ("Independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist."). He identifies six factors he claims should have alerted the officers that something was wrong: (1) Kennedy's "conflicting stories"; (2) her previous *crimen falsi* convictions; (3) the manner in which she reported the offense (by calling a parole officer instead of the police); (4) her delay in reporting; (5) her manner during the interview; and (6) her refusal to provide a thorough written statement.

Of the six factors, only the second (Kennedy's previous convictions) is especially relevant. The remaining five factors go to Kennedy's credibility during her interview,

8

which both Sheaffer and Haley testified did not cause them to doubt her allegations at the time. It's not clear from Haley's testimony when he became aware of Kennedy's prior convictions. But even assuming the officers were aware of Kennedy's criminal history prior to Davison's arrest, her previous convictions for receiving stolen property, theft by deception, and forgery of bad checks do not negate a finding of probable cause on the rape and assault allegations. *See Wilson*, 212 F.3d at 790. The officers could have concluded (and apparently did conclude) that Kennedy was telling the truth about being raped and threatened.

The District Court therefore did not err in concluding the parole officers had probable cause to arrest Davison.[6]

2

Finally, Davison claims the "failure to release [him] immediately upon receipt of exculpatory evidence constitute[d] an additional unreasonable seizure." Davison Br. 27. An unreasonable delay in a prisoner's release could give rise to a constitutional violation. *See, e.g.*, *Manuel v. City of Joliet., Ill.*, 137 S. Ct. 911, 917–18 (2017) (holding "the Fourth Amendment governs a claim for unlawful pretrial detention"); *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968) (applying a standard of unreasonable delay and concluding nine-month delay in releasing prisoner was "as a matter of law, . . . an unreasonable

---

[6] Davison also argues the officers violated a "continuing duty" to investigate after his arrest and "willfully ignored exculpatory evidence" while he was detained. This argument fails because an officer "executing an arrest warrant" does not have a constitutional duty "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979).

time"); *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 925 (3d Cir. 2010) (holding a five-day delay in release was "certainly unfortunate" but not unreasonable). Though an unreasonable delay may give rise to a constitutional violation, the "due process standard is one of reasonable dispatch, not of instantaneous action." *Burgess v. Roth*, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975).

In this case, Davison was released six days—including a weekend—after Detective Haley determined he would not file charges against him. This comports with the Probation and Parole Policy in effect that requires the release of an individual detained by parole officers within four business days of the underlying criminal charge being withdrawn or dismissed. *See* App. 273. Given the lower standard of proof required to prove a probation violation, *see United States v. Maloney*, 513 F.3d 350, 354 (3d Cir. 2008), the District Court correctly concluded that Detective Haley's decision not to file criminal charges was "not automatically dispositive of the technical violation." App. 25. Instead, Detective Haley informed Agent Sheaffer of his decision not to file criminal charges the same day he made it, and Agent Sheaffer then relayed that information to Agent Taylor and his supervisor. The probation officers still had to withdraw the technical violation charge against Davison independent from Detective Haley's decision not to file criminal charges. The six-day delay in release, though regrettable, was not unconstitutional.

\* \* \*

We will affirm the District Court's judgment for the reasons stated.